**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **O.E. BY AN THROUGH HIS PARENTS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-2578** |
| **NEW ORLEANS REGION TRANSIT AUTHORITY** | **SECTION: "G"(4)** |

**ORDER AND REASONS**

Before the Court are Defendant New Orleans Regional Transit Authority's ("RTA") Motion to Declare RTA in Compliance with the Consent Decree[1] and Plaintiff O.E.'s ("Plaintiff") Motion to Compel Production of Documents.[2] On February 28, 2025, the Court approved the parties' proposed Consent Decree.[3] The specific provision at issue states, as follows:

> Once the three 400-series streetcars mentioned above are added into active service—at which point there will be a total of seven ADA-accessible streetcars available for service—the RTA will update its regular schedule to ensure that the greatest number of ADA-accessible streetcars feasible are running at any given time. During Peak Service, there will be at least five ADA-accessible streetcars in active service on the line, subject to unanticipated repairs or maintenance-related issues.[4]

***A. RTA's Motion to Declare RTA in Compliance with the Consent Decree***

In its motion, RTA asks the Court to declare that it is in compliance with the Consent Decree based on, in relevant part, its operation of five ADA-accessible streetcars during peak

[1] Rec. Doc. 97.

[2] Rec. Doc. 98.

[3] Rec. Doc. 71.

[4] *Id.* at 6.

service hours. RTA further explains that there are seven total ADA-accessible streetcars, two of which are held in abeyance with one streetcar undergoing routine maintenance and the other streetcar acting as "RTA's sole operating spare."[5] For these reasons, RTA avers it is in compliance with the Consent Decree.

Plaintiff opposes the motion and argues that a determination of compliance is premature because discovery relevant to RTA's compliance remains outstanding.[6] Plaintiff further argues that the Consent Decree only authorizes Plaintiff to file compliance-related motions.[7] Plaintiff contends that RTA must operate the highest "feasible" number of ADA-accessible streetcars, pursuant to the Consent Decree.[8] While the Consent Decree states that at least five ADA-accessible streetcars are required to run during peak service hours, Plaintiff avers that the RTA may be required to run more than five if the total number of streetcars increases.[9]

Consent decrees are generally referred to as being "hybrids" of contracts and judicial decrees. Consent decrees have elements of both contracts and judicial decrees.[10] A consent decree "embodies an agreement of the parties" and is also "an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees."[11]

Indeed, the significance of a consent decree's hybrid status as contract and order is that the

[5] Rec. Doc. 97-1 at 12.

[6] Rec. Doc. 103 at 1–2.

[7] *Id.* at 2–3.

[8] *Id.* at 11.

[9] *Id.* at 12–13.

[10] *Firefighters v. Cleveland,* 478 U.S. 501, 519 (1986).

[11] *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 378 (1992).

decree is interpreted like a contract but enforced like a judicial order.[12] Because of this hybrid nature, the Fifth Circuit has held, in numerous contexts, that in interpreting a consent decree, the Court should apply basic rules of contract interpretation and construction, while also keeping in mind that the decree functions as an enforceable judicial order.[13]

As with any contract, the interpretation begins with looking to the "four corners" of the decree.[14] When a contract is expressed in unambiguous language, its terms will be given their plain meaning, and enforced as written.[15] Likewise, "[t]he entry of a consent decree necessarily implies that the litigants have assented to all of its significant provisions,"[16] and the Court must "honor the presumption that parties to a contract intend every clause to have some effect."[17]

"Since a consent decree or order is to be construed for enforcement purposes basically as a contract, reliance upon certain aids to construction is proper, as with any other contract. Such aids include the circumstances surrounding the formation of the consent order, any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree."[18]

As an initial matter, Plaintiff argues that RTA is not authorized to seek a declaration that it

---

[12] *United States v. Alcoa,* 533 F.3d 278, 288 (5th Cir. 2008), n. 32.

[13] *See, e.g., United States v. Chromalloy Am. Corp.,* 158 F.3d 345, 349 (5th Cir. 1998) (Comprehensive Environmental Response, Compensation, and Liability Act); *Dean v. City of Shreveport,* 438 F.3d 448, 460–61 (5th Cir. 2006) (employment discrimination); *Ruiz v. Estelle,* 161 F.3d 814, 822–23 (5th Cir. 1998) (Prisoner Litigation Reform Act); *Alcoa,* 533 F.3d at 288 (Clean Air Act); *United States v. City of Jackson, Miss.,* 359 F.3d 727, 732 (5th Cir. 2004) (Fair Housing Amendments Act); *City of El Paso, Tex. v. El Paso Entertainment, Inc.,* 464 Fed. Appx. 366, 372 (5th Cir. 2012) (unpublished) (municipal zoning).

[14] *Dean,* 438 F.3d at 448 (citing *Chromalloy,* 158 F.3d at 350).

[15] *Chromalloy,* 158 F.3d at 350 (internal citation omitted).

[16] *United States v. City of Miami,* 664 F.2d 435, 440 (5th Cir. 1981).

[17] *Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 377 (5th Cir. 2002) (internal citation omitted).

[18] *United States v. ITT Cont'l Baking Co.,* 420 U.S. 223, 238 (1975).

is in compliance with the Consent Decree. Plaintiff points to a provision in the Consent Decree that provides, "[i]f the RTA fails to comply with a material term of this Agreement, and if the disagreement cannot be worked out informally pursuant to the Dispute Resolution Process herein, Plaintiff shall have the right to bring a motion enforcing this Agreement before the Court."[19] According to Plaintiff, this provision authorizes only Plaintiff to bring an enforcement motion. The Court is not persuaded.

Plaintiff's argument reads the provision in isolation and overlooks other provisions governing enforcement and this Court's continuing jurisdiction. The Consent Decree expressly provides that "this Agreement is enforceable only by the Parties…"[20] and "[t]he parties agree to and shall request that this Court retain jurisdiction over this matter solely for the purposes of enforcement of the terms and conditions of this Agreement."[21] RTA is a party to the Consent Decree, and thus, has authority to enforce the Consent Decree. Nothing in the language identified by Plaintiff expressly prohibits RTA from seeking a determination concerning its compliance with the Consent Decree. For these reasons, the Court rejects Plaintiff's argument.

Turning to the merits of RTA's motion, the Consent Decree expressly contemplated that, following completion of the modifications to the three 400-series streetcars, RTA would have a total of seven ADA-accessible streetcars "available for service."[22] With knowledge that seven ADA-accessible streetcars would comprise RTA's fleet, the parties further agreed that RTA would "update its regular schedule to ensure that the greatest number of ADA-accessible streetcars

---

[19] Rec. Doc. 71 at 10.

[20] *Id.* at 4.

[21] *Id.* at 9.

[22] *Id.* at 6.

feasible are running at any given time" and that "[d]uring Peak Service, there will be at least five ADA-accessible streetcars in active service on the line, subject to unanticipated repairs or maintenance-related issues."[23]

These provisions must be read together and in a manner that gives effect to each. The Consent Decree does not require that RTA place all seven ADA-accessible streetcars into active service during peak service hours. RTA's motion explains that it currently maintains seven ADA-accessible streetcars, with five of those streetcars operating during peak service hours. Of the remaining two streetcars, one undergoes routine maintenance and the other is "RTA's sole operating spare." Based on this explanation, RTA contends that it has shown that it operates the highest feasible number of ADA-accessible streetcars. However, RTA has submitted no declarations, affidavits, or other competent evidence substantiating these representations. Statements and arguments of counsel in briefing do not constitute evidence.

The Consent Decree requires RTA to "ensure that the greatest number of ADA-accessible streetcars feasible are running at any given time." Accordingly, although RTA's operation of five ADA-accessible streetcars satisfies the Consent Decree's express requirement that at least five such streetcars operate during peak service, resolution of RTA's motion requires the Court to consider whether five constitutes the greatest number of ADA-accessible streetcars feasible under RTA's present operational circumstances.

RTA's representations concerning maintenance and the need to maintain an operating spare, if supported by competent evidence, may demonstrate that its present allocation of seven ADA-accessible streetcars is consistent with the Consent Decree. On the present record, however, the Court lacks an evidentiary basis upon which to make that factual determination.

---

[23] *Id.*

As the party seeking a declaration that it has complied with the Consent Decree, RTA bears the burden of establishing an adequate factual basis for the relief it requests. The Court cannot make the factual findings necessary to declare RTA in compliance based solely on unsupported representations contained in RTA's briefing. Accordingly, on the record presently before it, the Court cannot conclude that RTA has demonstrated compliance with the Consent Decree. RTA's motion is therefore denied.

### *B. Plaintiff's Motion to Compel*

The Consent Decree sets forth the following as it relates to document production:

> The RTA shall provide Plaintiff, upon written request, access to all non-privileged records, plans, or documents relevant to compliance with this Consent Decree. This includes construction progress reports, procurement contracts, streetcar maintenance records, and ADA accessibility assessments. The RTA shall respond to such requests within 14 days and may only withhold information if it demonstrates that the material is subject to privilege or other legal protection.[24]

As it relates to the Motion to Compel, Plaintiff seeks discovery bearing upon RTA's ability to operate additional ADA-accessible streetcars, and consequently, whether RTA has satisfied its obligations under the Consent Decree. On August 11, 2026, Plaintiff's counsel made a written request for production of documents to counsel for RTA.[25] In the Motion to Compel, Plaintiff states that RTA refused to produce the requested documents. In opposition, RTA explains that it did not ignore Plaintiff's request, rather RTA asked that Plaintiff narrow the document request and articulate how the requested materials were "relevant to compliance."[26] RTA argues that Plaintiff's motion should be denied because Plaintiff is not in "good faith" compliance with the Consent Decree's dispute resolution process, and Plaintiff does not have an absolute informational right to

---

[24] Rec. Doc. 71 at 9.

[25] Rec. Doc. 98-2.

[26] Rec. Doc. 104 at 3.

access RTA's documents when the request was challenged for lack of relevancy.[27] RTA contends that it responded to Plaintiff's request 13 days later, and the Consent Decree provides for 14 days to respond to document requests.[28] RTA avers that Plaintiff filed the instant motion before attempting dispute resolution.[29]

Plaintiff moves to compel RTA to produce documents concerning the operation and maintenance of its ADA-accessible streetcars. Plaintiff contends that these materials are necessary to evaluate RTA's assertion that it is presently in compliance with the Consent Decree, and RTA's representation that five ADA-accessible streetcars are operating during peak service hours while the remaining two are maintained in reserve.

As discussed above, however, the Court concludes that RTA has failed to provide competent evidence sufficient to establish its entitlement to a declaration of compliance. Because the Court denies RTA's motion on the present record, the Court need not compel production of additional documents for purposes of determining whether RTA has established its present compliance. The evidentiary deficiencies identified by the Court does not require Plaintiff to obtain additional evidence to disprove compliance that RTA has not adequately established in the first instance.

In any event, by its plain terms, the Consent Decree does not provide Plaintiff an unrestricted right to obtain documents from RTA. Rather, the parties expressly limited Plaintiff's right to access to documents "relevant to compliance with this Consent Decree." RTA timely responded to Plaintiff's request and sought clarification regarding the relevance of the requested

[27] *Id.* at 5.

[28] *Id.* at 6.

[29] *Id.*

documents to compliance with the Consent Decree.[30] It appears that Plaintiff did not provide the requested explanation nor did Plaintiff seek alternative dispute resolution before seeking judicial intervention. On the present record, Plaintiff has not demonstrated that RTA violated the document-production provision merely by requesting that Plaintiff establish the relevance of the materials sought or narrow its request for production. Accordingly, the Court finds no basis to compel production under the Consent Decree.

Accordingly,

**IT IS HERBY ORDERED** that RTA's Motion to Declare RTA in Compliance with the Consent Decree[31] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel[32] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 20th day of October, 2026.

Nannette Jolivette Brown

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT COURT**

---

[30] Rec. Doc. 97-5.

[31] Rec. Doc. 97.

[32] Rec. Doc. 98.